# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 17-cv-3002-WJM-SKC

TAJUDDIN ASHAHEED,

    Plaintiff,

v.

THOMAS E. CURRINGTON,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

In this action, Plaintiff Tajuddin Ashaheed ("Plaintiff") brings the following claims against Defendant Thomas E. Currington ("Defendant"): (1) violation of his First Amendment right to free exercise of religion, brought pursuant to 42 U.S.C. § 1983 ("Claim 1"; ECF No. 13 at 7–8, ¶¶ 30–40); (2) violation of his Fourteenth Amendment right to equal protection, brought pursuant to 42 U.S.C. § 1983 ("Claim 2"; *id*. at 9, ¶¶ 41–44); and (3) violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), brought pursuant to 42 U.S.C. §§ 2000cc *et seq*. ("Claim 3"; *id*. at 9–10, ¶¶ 45–48). Before the Court is Defendant's Motion to Dismiss (the "Motion"; ECF No. 44).

For the reasons set forth below, the Court grants the Motion, dismisses without prejudice Claim 1 and Claim 2, dismisses with prejudice Claim 3, and grants Plaintiff leave to file an amended complaint no later than June 3, 2019.

## I. BACKGROUND

The following factual summary is drawn from Plaintiff's amended complaint (the "Complaint"; ECF No. 13), except where otherwise noted. The Court assumes the allegations contained in the Complaint to be true for the purpose of deciding the Motion. *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiff has been a practicing Muslim since 1993. (ECF No. 13 at 3, ¶¶ 9, 11; *see also* ECF Nos. 54 at 4 & 54-4.) Pursuant to his religious beliefs, Plaintiff observes various Islamic rituals, including the "'Sunnha' [*sic*] practice of leaving one's beard to grow." (ECF No. 13 at 3, ¶ 9.) Plaintiff asserts that his beard "is integral to his religious identity" and that shaving his beard would "violate[] a core tenet of his faith." (*Id*. at 3, ¶ 10.)

In 1993, while serving a sentence at the Colorado Department of Corrections ("CDOC"), Plaintiff informed CDOC staff members of "his Muslim faith and signed a written declaration of his religious affiliation." (*Id*. at 3, ¶ 11.) Plaintiff alleges that from that date forward, the CDOC's file on Plaintiff listed him as being affiliated with the Muslim faith. (*Id*.; *see also id*. at 4, 9 ¶¶ 16, 47.) Sometime prior to 2014, Plaintiff was apparently released from the CDOC's custody. (*See id*. at 3, ¶¶ 11–12.)

In 2014, Plaintiff returned to the CDOC for a 4-year sentence, "at which time his file was updated and continued to document his Muslim faith." (*Id*. at 3, ¶ 12.) In March 2016, Plaintiff was released on parole. (*Id*. at 3, ¶ 13.) Plaintiff, however, was remanded to the CDOC in July 2016 to serve 90 days for various parole violations. (*Id*.) On July 5, 2016, Plaintiff appeared at the CDOC's intake and classification facility,

known as the Denver Reception and Diagnostic Center ("DRDC"), so that he could be processed into the CDOC's system and begin serving his 90-day sentence. (*Id*. at 4, ¶ 14.) On that day, Plaintiff had a beard in accordance with his Muslim faith and was "observing the holy month of Ramadan, the most sacred month for Muslims." (*Id*. at 4, ¶¶ 14–15.)

As the initial step in the intake process, an officer at the DRDC interviewed Plaintiff to review and update the information in the CDOC's file on Plaintiff. (*Id*. at 4, ¶ 16.) As a required part of the interview, the officer asked for Plaintiff's "religious faith group affiliation." (*Id*.) Plaintiff informed the officer that he was a practicing Muslim, and the officer in turn documented the religious affiliation in Plaintiff's file. (*Id*.) The officer, however, did not require Plaintiff to sign a form declaring his religion because the CDOC's file on Plaintiff contained his previous declaration (apparently the declaration he made in 1993). (*Id*.; *see also id*. at 3, ¶ 11.)

Pursuant to CDOC Reg. 850-11 (in the version in effect at the time of Plaintiff's July 2016 intake), all newly admitted inmates are required to be photographed without beards during the intake process (the "Regulation"; ECF No. 54-1 at 11). (ECF No. 13 at 4–5, ¶ 18.) The Regulation, however, has several exceptions. (*Id*.; *see also* ECF No. 54-1 at 11.) The exception that is germane to this action provides that "[a]n offender who claims that a beard is a fundamental tenet of a sincerely held religious belief will not be required to shave as long as the offender obtains documentation from the Office of Faith and Citizen Program's coordinator [the 'Exception']." (ECF No. 54-1 at 11.)

3

Despite the Exception, Plaintiff was ordered by Defendant, who is a correctional officer at the DRDC, to submit to having his beard shaved by the prison barber. (ECF No. 13 at 2, 5, ¶¶ 7, 19.) When "Plaintiff Ashaheed explained that he is a practicing Muslim and that shaving his beard would violate a core tenet of his faith, Defendant Currington stated that Plaintiff Ashaheed must have a 'full beard' in order to 'qualify' for the religious exemption to beard shaving." (*Id*. at 5, ¶ 20.) Plaintiff "then explained [to Defendant] that he is physically unable to grow a full beard, reiterated that his beard is worn for religious practices, and stated that his religious affiliation is documented in his CDOC file." (*Id*. at 5, ¶ 21.) In response, Defendant told Plaintiff that he "didn't want to hear about it," and that Plaintiff would be "thrown in the hole" if he did not submit to having his beard shaved. (*Id*. at 5, ¶¶ 21–22.)

As a result of Defendant's threat, Plaintiff submitted to having his beard shaved by the prison barber. (*Id*. at 5, ¶ 23.) Plaintiff claims that he "spent the remaining holy days of Ramadan, and months thereafter, beardless, feeling dehumanized, humiliated, his faith having been disrespected." (*Id*.) On October 29, 2017, Plaintiff completed the full term of his prison sentence and was discharged from CDOC custody. (ECF No. 38 at 6.)

On December 14, 2017, Plaintiff filed this action against Defendant. (ECF No. 1.) In the Complaint, Plaintiff alleges that Defendant violated: (1) his First Amendment right to free exercise of religion; (2) his Fourteenth Amendment right to equal protection; and (3) RLUIPA. (ECF No. 13.) On September 28, 2018, Defendant

moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 44.) Plaintiff subsequently filed a response to the Motion ("Response"; ECF No. 54).

On January 11, 2019, Defendant filed an Unopposed Motion to Stay Discovery Pending Resolution of Motion to Dismiss Plaintiff's Complaint. (ECF No. 56.) On January 28, 2019, Defendant's motion to stay was granted by United States Magistrate Judge S. Kato Crews. (ECF No. 58.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to

---

[1] In the Motion, Defendant asserts in his opening sentence that he moves to dismiss the action pursuant to Rule 12(b)(6) *and Rule 12(b)(1)*. (ECF No. 44 at 1.) Outside of that sentence, however, Defendant does not address Rule 12(b)(1), but only Rule 12(b)(6) and qualified immunity. (*See* ECF No. 44.) The Court considers such undeveloped arguments to be deemed forfeited. *See, e.g., Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001). Moreover, the Court presumes, and the record supports, that Defendant's Rule 12(b)(1) argument was solely directed at Claim 3 and Plaintiff's request for injunctive relief. (*See* ECF Nos. 23 & 40.) Since Plaintiff agreed to dismiss Claim 3 and his request for injunctive relief (as discussed below) prior to Defendant's filing of the Motion, the Court finds that Defendant is not moving to dismiss the Complaint pursuant to Rule 12(b)(1). Therefore, the Court need only address the arguments contained in the Motion concerning Rule 12(b)(6) and qualified immunity.

the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 559 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a complaint 'with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.  ANALYSIS

**A.     Claim 1—Free Exercise of Religion**

   1.     <u>Free Exercise Standard</u>

The Free Exercise Clause of the First Amendment applies to the states through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

6

Prisoners "'retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). "Yet such protections are not without reasonable limitations[, as] prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.*

The most common Free Exercise challenge in the prison setting is a challenge to a prison regulation that allegedly impinges on religious expression. Plaintiff's challenge does not fit that mold, but the parties argue as if it did. Therefore, in order to provide necessary context for the parties' arguments, the Court will address the standard for reviewing the validity of a prison regulation that allegedly impinges on a prisoner's constitutional right to free exercise of religion.

"[T]he standard for reviewing the validity of a prison regulation or policy affecting a prisoner's fundamental constitutional right, such as the free exercise of his or her religion, is this: 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Based on these principles, the Tenth Circuit has set forth a two-step inquiry for evaluating an alleged constitutional violation of the Free Exercise Clause in the prison context. *See Kay*, 500 F.3d at 1218–19.

First, "the prisoner-plaintiff must first show that a prison regulation substantially burdened [his] sincerely-held religious beliefs." *Id*. at 1218. (internal quotation marks

7

omitted). Thus, "[t]he first questions in any [F]ree [E]xercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Id*. With respect to the second inquiry in a Free Exercise claim, "prison officials-defendants may identify the legitimate penological interests that justified the impinging conduct." *Id*. (alterations incorporated) (internal quotation marks omitted). At that point, courts balance the factors set forth in *Turner*, 482 U.S. at 89–91, to determine the reasonableness of the regulation.[2] *Kay*, 500 F.3d at 1218–19. However, "only the first of these inquiries is relevant at the motion-to-dismiss stage." *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (citing *Kay*, 500 F.3d at 1219).

2. Plaintiff Adequately Stated A Free Exercise Claim Under Rule 12(b)(6)

In the Complaint, Plaintiff alleges that Defendant violated the Free Exercise Clause when he ordered Plaintiff to shave his beard or face punishment, despite Plaintiff's protests and assertion that shaving would violate his documented religious beliefs. As mentioned above, Plaintiff has adequately stated a First Amendment Free Exercise claim, for the purposes of Rule 12(b)(6), if the Complaint alleges that Defendant substantially burdened the exercise of his sincerely-held religious belief. *Id*.

The inquiry into the "sincerity" of Plaintiff's religious beliefs "is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment, let alone a motion to dismiss." *Kay*, 500 F.3d at

---

[2] The *Turner* factors include: "(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights." *Kay*, 500 F.3d at 1219.

1219 (internal quotation marks omitted). The Tenth Circuit has held that "dismissal on the sincerity prong is appropriate only in the 'very rare case' in which the plaintiff's beliefs are 'so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection.'" *Id*. at 1219–20 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1353 (10th Cir. 1997)).

On this record, such a determination is unwarranted. Reviewing the Complaint, and taking the factual allegations as true, enough factual support exists to conclude that Plaintiff is a sincere believer in the Islamic faith, that he believes that exercising his Islamic faith mandates him to grow a beard, and that this belief was substantially burdened when Defendant coerced him into shaving his beard. (*See* ECF No. 13.) This is sufficient to satisfy the first step of a free exercise inquiry and to survive a Rule 12(b)(6) motion. *See Williams*, 645 F. App'x at 704–05.

Indeed, Defendant does not dispute in the Motion that Plaintiff's religious belief mandating him to have a beard is sincerely held, or that Defendant's actions substantially burdened Plaintiff's ability to exercise this religious belief. (*See* ECF No. 44 at 3–4.) Instead, Defendant's arguments focus exclusively on the second inquiry—namely, that legitimate penological interests justified Defendant's impinging conduct. (*Id.*) In the Motion, Defendant states his view of the legal standard for reviewing the validity of a prison regulation affecting a prisoner's First Amendment right to free exercise of religion, and follows with a 227-word block quote from *Holt v. Hobbs*, 135 S. Ct. 853, 864–65 (2015), that discusses how "prisons have a compelling interest in the quick and reliable identification of prisoners," meaning that prisons may require

inmates to shave for their intake photograph. (ECF No. 44 at 3–4.) Defendant then declares that "the CDOC has not only a legitimate interest in photographing its offenders without facial hair at intake, but rather a compelling interest in doing so." (*Id*. at 4.) Defendant, however, does not address the first inquiry for constitutional violations of the Free Exercise Clause or apply the law of *Holt* to the facts of this action. (*See id*. at 3–4.)

Frankly put, it appears that Defendant has misunderstood the allegations in the Complaint in regard to Plaintiff's Free Exercise claim. Plaintiff nowhere alleges that the Regulation is unconstitutional or substantially burdened his sincerely-held religious beliefs. Nor can the allegations plausibly lead to the proposition that Defendant's actions were undertaken to further the state's interest in prison security and identification of its prisoners. *See Holt*, 135 S. Ct. at 864–65. Instead, Plaintiff asserts that *Defendant's individual* actions in requiring him to shave his beard or face punishment—as opposed to any prison regulation—were designed to disrupt Plaintiff's religious practices and were intentionally directed at Plaintiff due to Defendant's hostility towards the religion of Islam. (ECF No. 13 at 5–8.)

For instance, when Plaintiff protested to having his beard shaved because he was a "practicing Muslim" and "shaving his beard would violate a core tenet of his faith," Defendant responded that Plaintiff's beard was not full enough to "'qualify' for the religious exemption to beard shaving." (*Id*. at 5, ¶ 20.) When Plaintiff then explained that he was "physically unable to grow a full beard, reiterated that his beard is worn for religious practices, and stated that his religious affiliation is documented in his CDOC file," Defendant responded that he "didn't want to hear about it" and that Plaintiff would

10

be "thrown in the hole" if he did not submit to having his beard shaved. (*Id*. at 5, ¶¶ 21–22.) The Complaint, however, does not anywhere challenge the Regulation, or allege that it violated Plaintiff's constitutional rights. If anything, Plaintiff discusses the Regulation and its Exception in the Complaint to *support* his assertion that Defendant's conduct was intentional and discriminatory as Defendant knowingly deviated from the Exception without justification.

Accordingly, and contrary to Defendant's interpretation of the Complaint, Plaintiff does not allege that the Regulation substantially burdened his sincerely-held religious beliefs. Instead, he alleges that Defendant acted contrary to the Regulation's Exception, and that his actions "were designed to limit and interrupt Plaintiff['s] religious practices and were directed towards Plaintiff . . . because of his particular religious beliefs." (*Id.* at 7, ¶ 33.) The Complaint further states Defendant's "action of ordering Plaintiff . . . to submit to having his beard shaved, a violation [of] a core tenet of Islam, was undertaken due to [Defendant's] animus for Islam and its practitioners." (*Id.* at 8, ¶ 35.) Thus, it is apparent from the Motion that Defendant has misunderstood the allegations in the Complaint in regard to Claim 1, as Defendant's argument solely focuses on how the *Regulation* did not violate the Free Exercise Clause.

Plaintiff's claim should be evaluated under the standard for pleading acts of religious discrimination by an official acting on his or her personal religious animus, not according to a regulation. *See Carr v. Zwally*, 2019 WL 136978, at *2 & n.4 (10th Cir. Jan. 8, 2019). Because Defendant has not challenged Plaintiff's claim under the proper framework, Defendant's Rule 12(b)(6) challenge necessarily fails.

### 3. Qualified Immunity Standard

This, however, does not conclude the Court's analysis as to Claim 1 as the Court must now determine whether Defendant is entitled to qualified immunity.

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016). "Once the qualified immunity defense is asserted [as Defendant has done here], the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir.), *cert. denied*, 138 S. Ct. 211 (2017); *see also Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900. "A plaintiff need not show the very act in question

previously was held unlawful in order to establish an absence of qualified immunity." *Id*. (internal quotation marks omitted). But "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it[.]'" *Sheehan*, 135 S. Ct. at 1774 (alterations incorporated) (internal citation omitted) (quoting *al-Kidd*, 563 U.S. at 741).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742). Therefore a plaintiff may not defeat qualified immunity "simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. at 552. Nonetheless, the clearly established inquiry "involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted).

### 4. Plaintiff Has Not Satisfied His Burden

As discussed above, the Court has the discretion in deciding which of the two prongs of the qualified immunity analysis should first be addressed. *See Pearson*, 555 U.S. at 236. In light of the circumstances of this particular case, the Court finds that the second prong—whether the constitutional right was clearly established at the time of Defendant's unlawful conduct—should be addressed at the outset.

A thorough review of the pleadings leads the Court to conclude that Plaintiff has failed to demonstrate that the constitutional right Defendant allegedly violated when he coerced Plaintiff into having his beard shaved was clearly established at the time of Defendant's conduct. Consequently, Defendant prevails on his qualified immunity defense. Accordingly, the Court need not address the first prong of the qualified immunity standard—that is, whether Defendant's conduct in coercing Plaintiff to have his beard shaved actually violated Plaintiff's constitutional rights.

To show that this constitutional right is clearly established, Plaintiff has the burden to "point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900. Accordingly, Plaintiff has the burden to provide the Court with case law supporting his theory of constitutional liability. The only case Plaintiff points to, however, is *Holt*—which is largely extraneous to the allegations contained in the Complaint as *Holt*, 135 S. Ct. 853, is centered on a *prison policy* that violated RLUIPA, and not on a violation of the Free Exercise Clause by a prison guard's *individual act of discrimination*. (ECF No. 54 at 3–4.) It appears Plaintiff was lead astray by Defendant's argument in the Motion regarding the constitutionality of the Regulation based on *Holt*, and somehow Plaintiff lost track of the allegations he was actually making.

Plaintiff's burden is to identify Supreme Court or Tenth Circuit case law, or the great weight of other authority, showing that Defendant violated the Free Exercise Clause when he coerced Plaintiff into shaving his beard for allegedly no reason other than religious animus (perhaps influenced by religious stereotyping, considering

14

Defendant's alleged explanation that Plaintiff's beard was not full enough to qualify for the religious exemption). Plaintiff has not done so. Given the structure of the qualified immunity analysis, the Court cannot ignore Plaintiff's failure to cite any case law on point. As a consequence of Plaintiff's failure to satisfy the second prong of the qualified immunity analysis, on the present record the Court must grant Defendant qualified immunity and dismiss Claim 1.

But, due to the parties' palpable and persistent confusion in regard to what Plaintiff is actually alleging in his First Amendment claim, the Court will dismiss Claim 1 without prejudice and grant Plaintiff leave to file an amended complaint. If Plaintiff chooses to amend his Complaint and proceed with a First Amendment claim based on Defendant's *individual* acts of discrimination, he should plead that claim (and Defendant should challenge it, if he so chooses) with reference to the proper standard in analyzing that actual claim. *See, e.g., Carr*, 2019 WL 136978, at *2 & n.4; *Ralston v. Cannon*, 884 F.3d 1060, 1064 n.3 (10th Cir. 2018). Or, if Plaintiff is in fact arguing that the Regulation violated the Free Exercise Clause, Plaintiff should make this clear in his amended complaint.

**B.      Claim 2—Equal Protection**

  1.      Equal Protection Standard

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, "[i]n order to assert a viable equal

protection claim, [Plaintiff] must first make a threshold showing that [he was] treated differently from others who were similarly situated." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *see also Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019).

2. <u>Plaintiff Fails To State An Equal Protection Claim Under Rule 12(b)(6)</u>

In the Complaint, Plaintiff makes a single conclusory allegation that he was treated differently from others who were similarly situated. In particular, Plaintiff states: "On information and belief, other religious groups do not face the same challenges, nor are they subject to the same apparent animus and burdens as those directed by Defendant Currington towards Muslims inmates." (ECF No. 13 at 7, ¶ 29.)

In the Motion, Defendant asserts that apart from this conclusory allegation, the "Complaint is devoid of any factual allegations demonstrating that Defendant treated him differently than similarly situated individuals." (ECF No. 44 at 5.) Therefore, Defendant claims that "Plaintiff has failed to state a viable equal protection claim against Defendant." (*Id.*) The Court agrees.

"With any equal protection claim, the plaintiff must . . . demonstrate that he was treated differently than another who is similarly situated." *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) (alterations incorporated). Plaintiff fails to satisfy this standard as the Complaint does not plausibly plead any facts which demonstrate that there are similarly situated inmates who were treated in an allegedly non-discriminatory manner. Instead, Plaintiff merely makes a single conclusory statement that, "[o]n information and belief," Defendant did not discriminate against other religious groups. (ECF No. 13 at 7, ¶ 29.)

16

While a complaint need not set forth exhaustive factual allegations, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of cause of action'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Based on these standards, Plaintiff's Equal Protection claim is clearly insufficient for Rule 12(b)(6) purposes. Indeed, the sole allegation that Plaintiff offers is conclusory, unsupported by allegations of fact, and is therefore insufficient to sustain a cause of action under Rule 12(b)(6).[3] Accordingly, the Court must grant Defendant's Motion insofar as it seeks to dismiss Claim 2.

However, as it is doing with respect to Claim 1, the Court will give Plaintiff a final opportunity to allege a Equal Protection claim that is sufficient for Rule 12(b)(6) purposes. Therefore, the Court's dismissal of Claim 2 is without prejudice.

**C.    Claim 3—RLUIPA**

---

[3] In addition, the Court notes that Plaintiff's Equal Protection claim could also be dismissed on the alternative ground that Plaintiff has failed to distinguish the claim from his Free Exercise claim. In *Williams*, even though the plaintiff in that case alleged a more specific and less conclusory equal protection claim than what was contained in the Complaint, the Tenth Circuit nonetheless found that it "need not analyze [the plaintiff's] equal-protection claim in detail because . . . he ha[d] not distinguished this claim from his free-exercise claim." 645 F. App'x at 708 & n.18 (internal quotation marks omitted). In affirming the district court's dismissal of the claim, the Tenth Circuit noted that the plaintiff's "cursory equal protection claim [was] nothing more than a rephrasing of his free-exercise claim." *Id*.; *see also Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) (affirming dismissal of an Equal Protection claim because the plaintiff did "not distinguish[ ] this claim from his free-exercise claim" and "never devot[ed] more than a page to the claim in any pleading").

Through Defendant's Motion and Plaintiff's Response, the Court has been advised that "the parties [have] agreed that Plaintiff will dismiss the official capacity damage claim and the request for injunctive relief, and each side will bear her [*sic*]/his own fees and costs as to those claims." (ECF Nos. 44 at 1 & 54 at 2.) Although the parties do not explicitly state that Plaintiff has agreed to dismiss Claim 3, it clear from the filings that this is indeed their intent.

For instance, the Complaint contends that Plaintiff brings an action against Defendant "in his individual capacity with respect to each Claim for Relief set forth below, except for [Claim 3], for which Defendant . . . is sued in his official capacity only." (ECF No. 13 at 2–3, ¶ 8; *see also id*. at 7, 9.) In other words, Claim 3 is the only claim brought against Defendant in his official capacity, and therefore it is the only claim that could be considered the "official capacity damage claim" that Plaintiff is seeking to dismiss. (*See* ECF Nos. 44 at 1 & 54 at 2.)

In addition, Defendant states in the Motion that, as a result of Plaintiff agreeing to dismiss the "official capacity claim and any claim for injunctive relief, . . . there is no further relief Plaintiff can obtain under RLUIPA and [thus] the RLUIPA claim should be dismissed in its entirely [*sic*]." (ECF No. 44 at 6.) In support, Defendant asserts that "claims brought pursuant to RLUIPA can only be brought against prison officials in their official capacities, and claimants may only pursue prospective injunctive relief under RLUIPA." (*Id*. at 7 (emphasis omitted) (citing *AlAmiin v. Morton*, 528 F. App'x 838, 842 (10th Cir. 2013); *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013); *Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005)).) In his Response, Plaintiff does not

18

address Claim 3 or these arguments. (*See* ECF No. 54.) Instead, Plaintiff's Response focuses exclusively on his arguments relating to Claim 1 and Claim 2. (*Id*.)

Accordingly, and pursuant to the parties' express intentions, the Court grants Defendant's Motion to the extent it seeks to dismiss Claim 3, and dismisses the claim and Plaintiff's request for injunctive relief with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 44) is

    • GRANTED WITHOUT PREJUDICE as to Claim One (ECF No. 13 at 7–8, ¶¶ 30–40);

    • GRANTED WITHOUT PREJUDICE as to Claim Two (*id*. at 9, ¶¶ 41–44);

    • GRANTED WITH PREJUDICE as to Claim Three (*id*. at 9–10, ¶¶ 45–48) and Plaintiff's request for injunctive relief (*id*. at 10);

2. Plaintiff is GRANTED LEAVE to file an amended complaint, consistent with this Order, no later than **June 3, 2019**; and

3. Given the dismissal of all claims, the stay entered on January 28, 2019 (ECF No. 58) is, to some extent, moot. However, the Court will not formally lift the stay at this time, but will await the parties' actions with respect to the amended complaint authorized above.

Dated this 2nd day of May, 2019.

BY THE COURT:

William J. Martínez
United States District Judge