**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-3002-WJM-KMT

TAJUDDIN ASHAHEED,

    Plaintiff,

v.

THOMAS E. CURRINGTON,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

In its current posture Plaintiff Tajuddin Ashaheed ("Plaintiff") brings the following claims against Defendant Thomas E. Currington ("Defendant") in this action: (1) violation of his First Amendment right to free exercise of religion, brought pursuant to 42 U.S.C. § 1983 ("Claim 1"; ECF No. 65 at 7–9, ¶¶ 32–42); and (2) violation of his Fourteenth Amendment right to equal protection, brought pursuant to 42 U.S.C. § 1983 ("Claim 2"; *id.* at 9–10, ¶¶ 43–50).

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"; ECF No. 87), which was filed on September 3, 2019.

For the reasons set forth below, the Court grants the Motion and dismisses Claims 1 and 2 with prejudice.

**I. BACKGROUND**

The following factual summary is drawn from Plaintiff's second amended complaint (the "Second Amended Complaint"; ECF No. 65), except where otherwise

noted. The Court assumes the allegations contained in the Second Amended Complaint to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiff is a practicing Muslim who observes various Islamic practices, including the "'Sunnha' practice of leaving one's beard to grow." (ECF No. 65 at 3, ¶¶ 9–10.) He asserts that his beard is "integral to his religious identity" and serves "as a sign of his sincerely held faith of decades, cultural inclusion and respect for tradition." (*Id.* at 3, ¶ 10.) Plaintiff believes that "shaving his beard is forbidden and, as such, violates a core tenant [*sic*] of his faith." (*Id.*)

In 1993, while serving a prior sentence at the Colorado Department of Corrections ("CDOC"), Plaintiff informed CDOC staff members of "his Muslim faith and signed a written declaration of his religious affiliation." (*Id.* at 3, ¶ 11.) Plaintiff contends that his "CDOC file was documented with his religious affiliation with the faith of Islam." (*Id.*) At the time, he "was given a Koran and prayer rug" and participated in religious practices during his term of incarceration. (*Id.*) Plaintiff was apparently released from the CDOC's custody sometime prior to 2014. (*Id.* at 3, ¶¶ 11–12.)

In 2014, Plaintiff returned to the CDOC for a new 4-year sentence, "at which time his file was updated and continued to document his Muslim faith." (*Id.* at 3, ¶ 12.) In March 2016, Plaintiff was released on parole. (*Id.* at 3, ¶ 13.) In July 2016, however, Plaintiff was remanded to the CDOC to serve 90 days for various parole violations. (*Id.*)

On July 5, 2016, Plaintiff appeared at the CDOC's intake and classification facility, known as the Denver Reception and Diagnostic Center ("DRDC"), so that he could be processed into the CDOC's system and begin serving his 90-day sentence.

(*Id*. at 4, ¶ 14.) On that day, Plaintiff had a beard in accordance with his Muslim faith and was "observing the holy month of Ramadan, the most sacred month for Muslims." (*Id*. at 4, ¶¶ 14–15.)

As the initial step in the intake process, an officer at the DRDC interviewed Plaintiff to review and update the information in the CDOC's file on Plaintiff. (*Id*. at 4, ¶ 16.) As a required part of the interview, the officer asked for Plaintiff's "religious faith group affiliation." (*Id*.) Plaintiff informed the officer that he was a practicing Muslim, and the officer documented the religious affiliation in Plaintiff's file. (*Id*.) The officer, however, did not require Plaintiff to sign a form declaring his religion because the CDOC's file on Plaintiff contained his previous declaration (apparently the declaration he made in 1993). (*Id*.; *see also id*. at 3, ¶ 11.)

The DRDC policies in place at the time of Plaintiff's July 2016 intake required inmates to have their beard shaved during the intake process. (*Id.* at 4–5, ¶ 18.) However, the DRDC provides an exemption for inmates who wear a beard based on religious tenets. (*Id.*) Pursuant to the DRDC policies and the relevant exemption, a Muslim inmate may not be required to have his beard shaved. (*Id.*)

Before Defendant, who is a correctional officer at the DRDC, found out that Plaintiff was a Muslim, he "at first evidenced a desire to follow the rules at [CDOC] by forcing [Plaintiff] to shave, as is the case with all incoming inmates." (*Id.* at 5, ¶ 23.) Plaintiff alleges that when Defendant found out that Plaintiff was Muslim, Defendant "decided to violate [DRDC] policy and force him to shave despite his exemption from the general rule." (*Id.* at 5, ¶ 23.) According to Plaintiff, Defendant "did this knowing

3

that this violation of [DRDC] policy would violate a fundamental tenent [*sic*] of Islam and evinced an intent by [Defendant] to show hostility towards Islam." (*Id.*)

For example, when "Plaintiff Ashaheed explained that he is a practicing Muslim and that shaving his beard would violate a core tenet of his faith, Defendant Currington stated that Plaintiff Ashaheed must have a 'full beard' in order to 'qualify' for the religious exemption to beard shaving." (*Id*. at 5, ¶ 20.) Plaintiff "then explained [to Defendant] that he is physically unable to grow a full beard, reiterated that his beard is worn for religious practices, and stated that his religious affiliation is documented in his CDOC file." (*Id*. at 5, ¶ 21.) In response, Defendant allegedly told Plaintiff that he "didn't want to hear about it," and he threatened that Plaintiff would be "thrown in the hole" if he did not submit to having his beard shaved. (*Id*. at 5, ¶¶ 21–22.)

As a result of Defendant's threat, Plaintiff submitted to having his beard shaved by the prison barber. (*Id*. at 6, ¶ 25.) Plaintiff claims that he "spent the remaining holy days of Ramadan, and months thereafter, beardless, feeling dehumanized, humiliated, his faith having been disrespected." (*Id*.)

Plaintiff alleges that although Defendant required him to shave his beard, "[o]ther non-Muslim inmates were allowed to keep items of religious significance, such as crosses, bibles and small wedding rings and only [Plaintiff] was singled out by [Defendant] to be treated differently from any other inmate of a different religion." (*Id.* at 6, ¶ 24.)

On December 14, 2017, Plaintiff filed this action against Defendant John Doe. (ECF No. 1.) On April 13, 2018, Plaintiff filed an amended complaint identifying Defendant Thomas E. Currington as the individual previously described as John Doe.

("First Amended Complaint"; ECF No. 13.)  In his First Amended Complaint, Plaintiff asserted three claims: (1) Defendant violated Plaintiff's First Amendment right to free exercise of religion; (2) Defendant violated Plaintiff's Fourteenth Amendment right to equal protection; and (3) Defendant violated Plaintiff's religious rights under the Religious Land Use and Institutionalized Persons Act.  (ECF No. 13.)

On September 28, 2018, Defendant filed a motion to dismiss the First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 44.)  On May 2, 2019, the Court granted Defendant's original motion to dismiss, dismissing Claim 1 and Claim 2 without prejudice, and dismissing Claim 3 with prejudice.  (ECF No. 60.)  The Court also granted Plaintiff leave to file an amended complaint.  (*Id.* at 19.)

On June 26, 2019, Plaintiff filed the Second Amended Complaint against Defendant.  (ECF No. 65.)  There, Plaintiff alleges that Defendant violated: (1) his First Amendment right to free exercise of religion; and (2) his Fourteenth Amendment right to equal protection.  (*Id.*)  On September 3, 2019, Defendant moved to dismiss this action pursuant to Federal Civil Rule of Procedure 12(b)(6) and the defense of qualified immunity.  (ECF No. 87.)  On October 15, 2019, Plaintiff filed a response to the Motion (ECF No. 96), and Defendant filed a reply to the Motion on October 25, 2019 (ECF No. 97).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.  ANALYSIS

A.  **Claim 1—Free Exercise of Religion**

Plaintiff alleges that Defendant violated Plaintiff's free exercise of religious freedom under the First Amendment of the U.S. Constitution.  (ECF No. 65 at 8–9, ¶¶ 32–42.)  Defendant contends in response that he is entitled to qualified immunity and, as such, that Claim 1 should be dismissed.  (ECF. No. 87 at 4–10.)

The Court will assume, for purposes of this Order only, that Plaintiff has adequately pleaded a free exercise claim and will turn to whether the defense of qualified immunity applies.

1.  Qualified Immunity Standard

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."  *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted; ellipses in original).  "Once the qualified immunity defense is asserted," as Defendant has done here, "the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity."  *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017); *see also Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).  "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted). "A plaintiff need not show the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Id*. (internal quotation marks omitted). But "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *City and Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742). Therefore, a plaintiff may not defeat qualified immunity "simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Nonetheless, the clearly established inquiry "involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."

*Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citation omitted).

Because qualified immunity is immunity from suit, rather than a mere defense to liability, *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), a court may dismiss the case with or without prejudice if it finds that a defendant is subject to qualified immunity. *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

    2.    <u>Plaintiff Has Not Satisfied His Burden on Qualified Immunity</u>

As discussed above, the Court has discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson*, 555 U.S. at 236. Considering the circumstances of this particular case, the Court finds that the second prong—whether the constitutional right was clearly established at the time of Defendant's unlawful conduct—should be addressed first.

The Court previously dismissed Claim 1 without prejudice on the following basis:

> Plaintiff's burden is to identify Supreme Court or Tenth Circuit case law, or the great weight of other authority, showing that Defendant violated the Free Exercise Clause when he coerced Plaintiff into shaving his beard for allegedly no reason other than religious animus (perhaps influenced by religious stereotyping, considering Defendant's alleged explanation that Plaintiff's beard was not full enough to qualify for the religious exemption). Plaintiff has not done so.

(ECF No. 60 at 14–15.)

In Plaintiff's Second Amended Complaint, Plaintiff alleges that "Defendant Currington's conduct violated clearly Plaintiff's established rights of which reasonable public officials knew or should have known as the law was clearly established that

9

discriminating against Muslim inmates based upon their religious beliefs was a violation of the United States Constitution." (ECF No. 65 at 9, ¶ 39.) In support of this proposition, Plaintiff cites *Tennyson v. Carpenter*, 558 F. App'x 813 (10th Cir. 2014), which is an unpublished case involving an inmate who claimed that his First Amendment rights were violated when he was suspended from the Christian prison choir based on a pretextual allegation of misconduct. *See id*. at 817.

Defendant argues that *Tennyson* is insufficient to establish that Plaintiff's rights were clearly established at the time of Defendant's conduct because *Tennyson* is an unpublished opinion. (ECF No. 87 at 6–7.) The Tenth Circuit has recognized it has "never held that a district court must ignore unpublished opinions in deciding the law is clearly established." *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012). Nonetheless, "an unpublished opinion provides little support for the notion that the law is clearly established on a given point." *Id.* (internal quotation marks omitted); *see also Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (noting, in the context of discussing the import of an unpublished Tenth Circuit decision, that "[a]n unpublished opinion . . . provides little support for the notion that the law is clearly established").

Even if the Court were to consider *Tennyson*, that case does not establish that the *particular conduct* at issue in this litigation was clearly established at the time of Plaintiff's intake at the DRDC. At best, *Tennyson* stands for the broad notion that prison guards may not take action against an individual prisoner which violates that prisoner's right to the free exercise of his or her religious beliefs. This premise, however, is far too expansive to clearly inform a reasonable officer in Defendant's shoes that the particular conduct at issue—requiring a Muslim inmate to shave his

beard during the prison intake process—would violate that inmate's First Amendment rights. *See White*, 137 S. Ct. at 552 (recognizing that a plaintiff may not defeat qualified immunity "simply by alleging violation of extremely abstract rights"); *Mullenix*, 136 S. Ct. at 308; *Sheehan*, 135 S. Ct. at 1774.

Because Plaintiff has failed to establish that Plaintiff's right to maintain his beard was clearly established under the First Amendment at the time of Defendant's conduct, the Defendant is entitled to qualified immunity as to that Claim. As such, the Court must dismiss Claim 1.

**B.     Claim 2—Equal Protection**

1.     Equal Protection Standard

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

In order to assert a viable equal protection claim, "the plaintiff must . . . demonstrate that he was treated differently than another who is similarly situated." *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) (internal quotation marks omitted); *see also Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019). To be "similarly situated" the individuals must be "*prima facie* identical in all relevant respects or directly comparable in all material respects. Although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *United States v. Moore*, 543 F.3d 891, 896

11

(7th Cir. 2008) (internal citations and quotation marks omitted).  The "similarly situated" requirement is an "exacting burden".  *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006).

      2.    <u>Plaintiff Fails To State An Equal Protection Claim Under Rule 12(b)(6)</u>

The Court previously dismissed Claim 2 because the Plaintiff's First Amended Complaint failed to allege "any facts which demonstrate that there are similarly situated inmates who were treated in an allegedly non-discriminatory manner." (ECF No. 60 at 16.)  In the Second Amended Complaint, Plaintiff attempts to cure the pleading deficiencies by adding an allegation that "[n]o other similarly situated inmates were subjected to this discriminatory treatment.  Currington routinely allows inmates of other religions to keep religious artifacts such as bibles, crosses and wedding rings during the intake process." (ECF 65 at 10, ¶ 48.)

Defendant argues that the Second Amended Complaint "fails to allege facts showing that the equal protection claim involves religions that are similarly situated" and that "allowing religious inmates to retain religious articles does not make them 'similarly situated' to the type of religious tenet that Mr. Ashaheed states he adheres to (requiring that he not shave his beard)." (ECF No. 87 at 11.)  The Court agrees.

The comparison offered by Plaintiff—that Muslim inmates who are forced to shave their beards during the DRDC intake process are similarly situated to inmates of other religions who are allowed to keep their religious artifacts—is truly unavailing.  These two groups are not "*prima facie* identical in all relevant respects" because the artifacts that Plaintiff identifies (bibles, crosses and wedding rings) do not change or potentially cover in part an inmate's appearance in the same manner as does a beard.

*See Moore*, 543 F.3d at 896. In the Court's view, inmates of other religions who are allowed to keep religious artifacts such as bibles, crosses and wedding rings are not similarly situated to Plaintiff.

Moreover, despite claiming that "[Plaintiff] was singled out among all religious inmates for differential treatment by [Defendant]" (ECF 65 at 10, ¶ 50), Plaintiff has failed to allege that Defendant allowed *any* inmate of *any* religion to keep a beard during the intake process. Because Plaintiff fails to satisfy his burden to allege that he was treated differently than a similarly situated individual, Plaintiff has not plausibly stated an equal protection claim. Thus, the Court must also dismiss Claim 2.

## C.  Whether the Court Should Dismiss With or Without Prejudice

The Court turns finally to the question of whether the dismissal of Plaintiff's claims should be with or without prejudice. The Court finds it would be futile to allow Plaintiff yet a fourth opportunity to plead plausible claims of either Free Exercise or Equal Protection. Accordingly, the Court finds it appropriate at this time to dismiss both claims with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## IV.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1. Defendant's Motion to Dismiss Complaint and Jury Demand (ECF No. 87) is GRANTED;

2. Plaintiff's claims, and this action, are DISMISSED WITH PREJUDICE;

3.  The Clerk shall enter judgment in favor of Defendant and against Plaintiff and shall terminate this case; and

4.  Defendant shall have his costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 26th day of May, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge