**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-3002-WJM-TPO

TAJUDDIN ASHAHEED,

     Plaintiff,

v.

DERRICK PORCHER,

     Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Derrick Porcher moves for summary judgment ("Motion") on Plaintiff Tajuddin Ashaheed's First Amendment Free Exercise claim. (ECF No. 190.) The Motion is fully briefed. (ECF Nos. 195, 202.) For the following reasons, the Motion is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The Court assumes the parties' familiarity with the factual and procedural history of this case from, among other sources, the Court's Order granting in part and denying in part Porcher's motion to dismiss Ashaheed's third amended complaint ("TAC"). (ECF No. 177 at 1–13.) The Court incorporates that history here.

## II. ANALYSIS

Porcher contends he is entitled to summary judgment on Ashaheed's sole remaining claim in this case—his Free Exercise claim—because (1) no evidence shows that Porcher "substantially burdened [Ashaheed's] religious practice" and (2) he is entitled to qualified immunity. (ECF No. 190 at 2.) Porcher is mistaken.

## A.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Coomer v. Lindell*, 2024 WL 3989524, at *2 (D. Colo. Aug. 29, 2024) (quoting Fed. R. Civ. P. 56(a)).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Id.* (quoting *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quotations omitted).  "It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial." *Id.* (citing *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "At all times, the Court will 'view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant.'" *Id.* (quoting *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

## B.    INTENTIONAL DISCRIMINATION OR ANIMUS

Porcher argues that Ashaheed's Free Exercise claim fails because it is based on a "single incident of having his beard shaved," which was the result of Porcher's mere "negligence or mistake," not intentional discrimination or animus.  (ECF No. 190 at 6.)  Ashaheed's proffered evidence, however, suggests otherwise.

"The Free Exercise Clause provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Ashaheed v. Currington*, 7 F.4th 1236, 1243 (10th Cir. 2021) (quoting U.S. Const. amend I).  "It protects against government regulation of religious belief or conduct and has been applied to the states through the

Fourteenth Amendment's Due Process Clause."  *Id.* (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).

"The Supreme Court's free exercise cases primarily address laws that burden religious exercise."  *Id.*  "A law that is 'neutral' and 'generally applicable' is constitutional if it is rationally related to a legitimate government interest."  *Id.* (quoting *Brown v. Buhman*, 822 F.3d 1151, 1160 n.5 (10th Cir. 2016)); *see also Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021); *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877–79 (1990).  "A law that is not 'neutral' or 'general[ly] applicab[le]' is unconstitutional unless it is 'narrowly tailored to advance' 'a compelling government interest.'"  *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)); *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam).

"[T]he First Amendment applies to exercises of executive authority no less than it does to the passage of legislation."  *Shrum v. City of Coweta*, 449 F.3d 1132, 1140 (10th Cir. 2006); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562–63 (2018) (police officers who ordered a person to stop praying might have violated her free exercise rights); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1293–99 (10th Cir. 2004) (reviewing executive action under the Free Exercise Clause).  Executive action "motivated by [the plaintiff's] religious commitments" is "not neutral" and is "a violation of his clearly established constitutional rights under the Free Exercise Clause," even if not "motivated by overt religious hostility or prejudice" or "animus."  *Shrum*, 449 F.3d at 1144–45 (quotations omitted).  "[W]here government bodies discriminate out of 'animus' against particular religions, such decisions are plainly unconstitutional."  *Colo. Christian Univ. v.*

3

*Weaver*, 534 F.3d 1245, 1260 (10th Cir. 2008).

The Tenth Circuit already had the opportunity to review Ashaheed's allegations in this case, including the following:

- Ashaheed "told Sergeant Currington he was Muslim, that shaving his beard would violate his Muslim faith, and he was entitled to the religious exemption in the Center's beard-shaving policy."

- "Sergeant Currington implausibly told him he had to have a 'full beard' in order to 'qualify' for the religious exemption."

- "When Mr. Ashaheed continued to press to keep his beard, Sergeant Currington responded dismissively and threatened to place him in solitary confinement."

- "Sergeant Currington allowed non-Muslim inmates to benefit from a policy that allowed them to keep religiously significant personal items."

*Ashaheed*, 7 F.4th at 1244.  Based on these averments, the Circuit concluded as follows:

> A jury could infer from these allegations that Sergeant Currington acted because Mr. Ashaheed is Muslim. Sergeant Currington's refusal to follow the Center's beard-shaving policy and grant Mr. Ashaheed a religious exemption, when he previously accommodated the religious needs of non-Muslims under the Center's personal-effects policy, shows that he burdened Mr. Ashaheed's religion in a discriminatory and non-neutral manner.
>
> *Beyond intentional discrimination, the complaint alleged that Sergeant Currington acted with anti-Muslim animus.*  We recognize that alleging and proving animus are two different things, *but if Mr. Ashaheed can prove his allegations, particularly those alleging Sergeant Currington's dismissive attitude, threats, and differential treatment of non-Muslims, a reasonable jury could find religious animus.*

4

*Id.* (emphases added).

Save two exceptions, not much has changed since the Tenth Circuit articulated this law of the case. *See Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 2025 WL 1873125, at *2 (10th Cir. July 8, 2025) (under the law of the case doctrine, "the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal") (quoting *Cressman v. Thompson*, 798 F.3d 938, 946 (10th Cir. 2015)). First, Ashaheed amended his complaint to substitute Porcher for Currington after learning through discovery that he had sued the wrong defendant. (*See generally* ECF No. 152.) Second, Ashaheed no longer alleges that a prison employee "allowed non-Muslim inmates to benefit from a policy that allowed them to keep religiously significant personal items." *Ashaheed*, 7 F.4th at 1244. He acknowledges in his Response to the Motion that "[t]his was a fact that was no longer applicable after C[olorado] D[epartment] O[f] C[orrections] revealed the proper defendant in this case." (ECF No. 195.) Other than those two changes, however, Ashaheed's material allegations remain the same: He continues to allege that Porcher intentionally discriminated against him with animus by forcing him to shave his beard during Ramadan and threatening to subject him to solitary confinement if he did not submit. (*See generally* ECF No. 152.)

Ashaheed substantiated these allegations through discovery. He testified at his deposition that "Mr. Porcher was the—the individual, indeed, who ordered me to shave my beard." (ECF No. 190-1 at 5.) Ashaheed further testified that, when he protested based on his religious beliefs, Porcher "looked at me and said that—you—you don't—you don't have a beard like Muslims do, that's not a Muslim beard." (*Id.* at 10.)

Ashaheed replied, "Bro, like I am—I am Muslim.  This is—this is my beard.  This is how

it grows, and I am not going to shave my beard."  (*Id.*)  Porcher then threatened that

"you are going to shave [your beard] or you are going to go in the hole."  (*Id.* at 10.)

   The Tenth Circuit thought this kind of conduct illustrated Currington (now

Porcher) "act[ing] not only counter to Center policy, but also . . . out of 'overt religious

hostility or prejudice.'"  *Id.* at 1245 (quoting *Shrum*, 449 F.3d at 1144).  What's more,

said the Circuit, these allegations, if proven, would show that Currington (now Porcher)

"engaged in intentional religious discrimination with anti-Muslim animus."  *Id.* at 1246.

These conclusions control here.  In other words, the Court is not free to disregard the

binding and emphatic analysis of the Tenth Circuit.  *Vivos Therapeutics, Inc.*, 2025 WL

1873125, at *2.

   Nor is the Court persuaded by Porcher's suggestion that there's room to

distinguish the Tenth Circuit's holding because Ashaheed no longer alleges that prison

officials allowed inmates of other faiths to keep religious objects.  (*See* ECF No. 190 at

7 (stressing that Ashaheed no longer alleges that a prison official "previously

accommodated the religious needs of non-Muslims under the Center's personal-effects

policy").)  True, the Circuit expressly referenced and relied on that averment in

concluding that Ashaheed had sufficiently pleaded a constitutional violation.  *See*

*Ashaheed*, 7 F.4th at 1244 (concluding that, "if Mr. Ashaheed can prove his allegations,

*particularly those alleging Sergeant Currington's dismissive attitude, threats, and*

*differential treatment of non-Muslims*, a reasonable jury could find religious animus")

(emphasis added).  But the Court disagrees with Porcher insofar as he submits that the

alleged "differential treatment of non-Muslims" was the solitary or dispositive basis of

the Circuit's decision.  (*Id.*)  That allegation may have been the lynchpin of Ashaheed's

equal protection claim, which the Court has since dismissed with prejudice.  (ECF No.

177 at 28.)  But its absence does not defeat Ashaheed's Free Exercise claim.  Indeed,

the Tenth Circuit perceived intentional discrimination—and even animus—based also

on Ashaheed's allegations that Porcher displayed a "dismissive attitude" and threatened

to throw him in "the hole" if he did not comply.  *Id*.

The Circuit's analysis likewise renders infirm Porcher's reliance on *Gallagher v.*

*Shelton*, 587 F.3d 1063 (10th Cir. 2009), *Strope v. Cummings*, 381 Fed. App'x 878

(10th Cir. 2010), *Tenison v. Byrd*, 826 F. Appx. 682 (10th Cir. 2020).  (ECF No. 190 at

6.)  Porcher relies on those cases for the proposition that "an isolated act of negligence

[cannot] violate any inmate's First Amendment right to free exercise of religion."

*Gallagher*, 587 F.3d at 1070.  But none of those cases are like this one, where the

Tenth Circuit already concluded that Porcher's conduct—albeit based on only one

incident—amounted to intentional discrimination and religious animus, not mere mistake

or negligence.  *Ashaheed*, 7 F.4th at 1244.  Thus, notwithstanding Porcher's urgings to

the contrary, the Court is bound to follow the *Ashaheed* decision.  To reiterate, that

decision discerned a First Amendment Free Exercise violation based on allegations still

present in the TAC and now supported by record evidence.  *Id.*

### C.    QUALIFIED IMMUNITY

The foregoing analysis necessarily resolves Porcher's argument that, because

Ashaheed has not "show[n] a violation of a clearly established constitutional right,"

Porcher is entitled to qualified immunity.  (ECF No. 190 at 8.)  For the reasons already

explained, the premise of Porcher's argument is manifestly flawed.  The law of the case

here is that Ashaheed has sufficiently asserted a Free Exercise violation.  This is so, the

Tenth Circuit reasoned, because Ashaheed's allegations, if proven, demonstrate

intentional discrimination and animus by Porcher.  *Id.*  As a result, Porcher's qualified

immunity argument necessarily fails.

To the extent Porcher posits that the mental state required to state a Free

Exercise claim is not clearly established across all circumstances, the Court does not

understand how that issue is pertinent here.  (ECF No. 190 at 10.)  Porcher points to the

*Ralston v. Cannon* decision, where the Tenth Circuit opined that "there is reason to

doubt whether 'conscious' interference with an individual's right to free exercise

amounts to a viable § 1983 First Amendment claim."  2021 WL 3478634, at *6 (10th Cir.

Aug. 9, 2021) (quoting *Ralston v. Cannon*, 884 F.3d 1060, 1062 (10th Cir. 2018)).  But

that unsettled question is of no moment where, as here, a defendant's conduct evinces

animus, not mere conscious interference.  It is settled law that, "where governmental

bodies discriminate out of 'animus' against particular religions, such decisions are

plainly unconstitutional."  *Ashaheed*, 7 F.4th at 1244 (quoting *Colo. Christian Univ.*, 534

F.3d at 1260, 1266).

For these reasons, and consistent with the Tenth Circuit's earlier decision, the

Court rejects Porcher's qualified immunity defense.

### III. CONCLUSION

For the foregoing reasons, the Motion is DENIED.  (ECF No. 190.)  The Final

Pretrial Conference remains SET for August 28, 2025 at 9:30 a.m. before U.S.

Magistrate Judge Timothy P. O'Hara.  (ECF Nos. 200, 201.)

8

Dated this 17th day of July, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge